[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 00-16434
_____

D. C. Docket No. 00-14298-CV-KLR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 25, 2001
THOMAS K. KAHN
CLERK

CHESTER MCCOY,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 25, 2001)**

Before BARKETT and HULL, Circuit Judges, and LIMBAUGH[*], District Judge.

HULL, Circuit Judge:

Asserting <u>Apprendi</u> errors, Chester McCoy appeals the district court's order

dismissing his initial motion to vacate, filed pursuant to 28 U.S.C. § 2255. After

_____

[*]Honorable Stephen N. Limbaugh, U.S. District Judge for the Eastern District of
Missouri, sitting by designation.

review, we affirm. In doing so, we hold that McCoy's <u>Apprendi</u> claims in his initial § 2255 motion are not jurisdictional and are barred by <u>Teague</u>'s non-retroactivity standard. Additionally, we hold that because McCoy did not raise his <u>Apprendi</u> claims on direct appeal, he is procedurally barred from raising them in his initial § 2255 motion.

## I. BACKGROUND

An indictment charged McCoy with conspiracy to possess with intent to distribute "a Schedule II narcotic controlled substance, that is, a mixture and substance containing a detectable amount of cocaine in the form of cocaine base, commonly known as crack cocaine," in violation of 21 U.S.C. § 846. McCoy pled guilty to this charge. The plea agreement contained a provision regarding the statutory minimum and maximum terms of imprisonment for the charge, which were based on the provisions of 21 U.S.C. § 841(b)(1)(A) applicable to cocaine base offenses involving more than 50 grams, as follows:

> The defendant understands and agrees that the court must impose a minimum term of imprisonment of ten years and may impose a statutory maximum term of life imprisonment, followed by a term of supervised release.

The district court sentenced McCoy to ten years' imprisonment. McCoy did not file a direct appeal of his sentence, which became final on January 20, 1999.

On October 3, 2000, McCoy filed a motion to vacate pursuant to 28 U.S.C. § 2255, the only one he has filed, arguing that his sentence was illegal under Apprendi v. New Jersey, 530 U.S. 466 (2000). Specifically, McCoy contended that the indictment, because it did not allege a specific drug quantity, violated the Fifth Amendment indictment clause, thus depriving the court of jurisdiction to sentence him to a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).

On October 19, 2000, without seeking a response from the government, the magistrate judge to whom McCoy's motion was referred recommended that the district court deny McCoy's § 2255 petition on the ground that "[t]he Eleventh Circuit Court of Appeals has held that Apprendi has not been made retroactive to cases on collateral review," citing In re Joshua, 224 F.3d 1281 (11th Cir. 2000). McCoy objected to the magistrate judge's recommendation, arguing that In re Joshua applied only to cases involving successive § 2255 motions and that the retroactivity of Apprendi to his initial § 2255 motion is governed solely by Teague v. Lane, 489 U.S. 288 (1989). On November 16, 2000, the district court summarily adopted the magistrate judge's recommendation and denied McCoy's § 2255 motion.

On appeal, the government concedes that the district court was incorrect in applying In re Joshua to McCoy's § 2255 motion.[1]  However, the government contends (1) that McCoy's Apprendi claim is barred by Teague's non-retroactivity standard, and (2) that McCoy cannot establish cause and prejudice for his failure to assert his claims on direct appeal, pursuant to United States v. Frady, 456 U.S. 152 (1982).[2]

## II.  DISCUSSION

A.  Nature of an *Apprendi* Claim

---

[1]The government is correct in its concession.  In re Joshua involved a successive § 2255 motion and was thus subject to the AEDPA's requirement prohibiting successive filings unless they involve "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2244(b)(2)(A).  Because McCoy is bringing his first § 2255 motion, In re Joshua does not apply.

[2]McCoy contends that the certificate of appealability ("COA") issued in this case, which specifically included only the In re Joshua issue and the substantive merits of McCoy's Apprendi argument, is not broad enough to allow this Court to consider the government's arguments that McCoy's § 2255 motion is barred by either Teague v. Lane or by the cause and prejudice standard.

Although our review is limited to the issues specified in the COA, "we will construe the issue specification in light of the pleadings and other parts of the record."  Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998).  The application of Teague v. Lane and of the cause and prejudice standard are procedural issues which must be resolved before this Court can reach the merits of McCoy's underlying Apprendi claim.  Because these arguments have not been addressed by the district court, we read the COA to encompass these issues.  See, e.g., Jones v. Smith, 231 F.3d 1227, 1231 (9th Cir. 2000) ("Absent an explicit statement by the district court, in cases where a district court grants a COA with respect to the merits of a constitutional claim but the COA is silent with respect to procedural claims that must be resolved if the panel is to reach the merits, we will assume that the COA also encompasses any procedural claims that must be addressed on appeal.").

4

As a threshold matter, McCoy characterizes his claim that the indictment did not allege drug quantity as required by Apprendi as "jurisdictional." He argues that his Apprendi claim can thus be raised in his § 2255 motion notwithstanding the Teague and procedural-bar doctrines. We have held that a jurisdictional defect may not be procedurally defaulted and that therefore a defendant need not show cause and prejudice to justify his failure to raise such a defect. See Harris v. United States, 149 F.3d 1304, 1309 (11th Cir. 1998) (stating that a defendant "need not show cause and prejudice to collaterally attack the enhanced sentence because jurisdictional claims cannot be procedurally defaulted"). We have never held that the Teague doctrine does not apply to jurisdictional claims, but even assuming arguendo for present purposes that a claim of a jurisdictional defect avoids the Teague doctrine as well as the procedural-bar doctrine, McCoy's claim of Apprendi error is not jurisdictional.

A jurisdictional defect is one that "strip[s] the court of its power to act and ma[kes] its judgment void." Escareno v. Carl Nolte Sohne GmbH & Co., 77 F.3d 407, 412 (11th Cir. 1996). Because parties cannot by acquiescence or agreement confer jurisdiction on a federal court, a jurisdictional defect cannot be waived or procedurally defaulted — instead, a judgment tainted by a jurisdictional defect

5

must be reversed.  See Harris, 149 F.3d at 1308-09; see also United States v. Griffin, 303 U.S. 226, 229 (1938).

The constitutional right to be charged by a grand jury is a personal right of the defendant and does not go to the district court's subject matter jurisdiction because it may be waived.  See Fed. R. Crim. P. 7(b).[3]  Thus, the constitutional right to be charged by grand jury indictment simply does not fit the mold of a jurisdictional defect, because it is a right that plainly may be waived.

This conclusion finds implicit confirmation in a host of cases dealing with Apprendi and analogous errors.  If Apprendi and analogous errors were jurisdictional, this Court could not of course affirm despite error; jurisdictional errors are not subject to plain- or harmless-error analysis.  But our decisions have consistently applied plain- or harmless-error review, depending on the timing of the objection, to Apprendi-based arguments that an indictment failed to include specific drug quantity.[4]  Indeed, this Court in applying plain error review has

_____

[3]Rule 7(b) provides as follows:
**Waiver of Indictment**.  An offense which may be punished by imprisonment for a term exceeding one year or at hard labor may be prosecuted by information if the defendant, after having been advised of the nature of the charge and of the rights of the defendant, waives in open court prosecution by indictment.
Fed. R. Crim. P. 7(b).

[4]See, e.g., United States v. Pease, 240 F.3d 938, 943-44 (11th Cir. 2001); United States v. Gerrow, 232 F.3d 831, 834 (11th Cir. 2000); United States v. Shepard, 235 F.3d 1295, 1297 (11th Cir. 2000); United States v. Swatzie, 228 F.3d 1278, 1282-84 (11th Cir. 2000); see also United States v. Nealy, 232 F.3d 825, 830 n.5 (11th Cir. 2000) (stating that defendant abandoned

6

affirmed convictions and sentences for a § 841(a) offense where the indictment failed to specify drug quantity even though the defendant received a greater sentence than the statutory maximum provided in § 841(b)(1)(C) without regard to quantity.  See, e.g., United States v. Pease, 240 F.3d 938, 943-44 (11th Cir. 2001) (finding plain error in the defendant's thirty-year sentence based on an indictment that failed to allege specific drug quantity, but finding no effect on the defendant's substantial rights); United States v. Swatzie, 228 F.3d 1278, 1282-84 (11th Cir. 2000) (stating "we assume arguendo that there was error, and that it was plain," where the defendant's life sentence was based on an indictment that failed to allege drug quantity, but finding no effect on the defendant's substantial rights).[5]

The majority of circuits to consider the issue, moreover, have applied plain error review to Apprendi-based claims that an indictment fails to specify drug

_____

his argument that the indictment was required to include the element of drug quantity by not raising the issue at trial or in his initial brief on appeal, but nonetheless noting "that the indictment likely only needs to reference the statute").

[5]Our application of plain error review in the indictment context is consistent with our practice in other Apprendi cases, centering on the failure to submit an alleged element to the jury, in which we have also applied harmless or plain error analysis based on the timing of the objection.  See United States v. Gallego, 247 F.3d 1191, 1198-2001 (11th Cir. 2001) (affirming life sentences); United States v. Wims, 245 F.3d 1269, 1272 (11th Cir. 2001) (affirming life sentence); United States v. Candelario, 240 F.3d 1300, 1311 (11th Cir. 2001) (affirming 360-month sentence), cert. denied, 121 S. Ct. 2535 (2001); United States v. Pease, 240 F.3d 938, 943 (11th Cir. 2001) (affirming 30-year sentence); United States v. Smith, 240 F.3d 927, 930 (11th Cir. 2001) (affirming 30-year sentence); United States v. Swatzie, 228 F.3d 1278, 1282-83 (11th Cir. 2000) (affirming life sentence).

quantity, even when the defendant was sentenced to a greater sentence than that provided by the statutory maximum in § 841(b)(1)(C) for a § 841(a) offense. See United States v. Terry, 240 F.3d 65, 74-75 (1st Cir. 2001) (finding no plain error in the defendant's 324-month sentence based on indictment which did not allege drug quantity), cert. denied, 121 S. Ct. 1965 (2001); United States v. Patterson, 241 F.3d 912, 914 (7th Cir. 2001) (noting that "the indictment was silent on the quantity of drugs the conspirators sold, but we cannot see why that matters to plain-error analysis" and affirming sentences exceeding twenty years); United States v. Nance, 236 F.3d 820, 824 (7th Cir. 2000) (finding the defendant's 262-month sentence based on an indictment that did not specify drug quantity was plain error under Apprendi which affected defendant's substantial rights, but finding that it did not seriously affect the integrity of the judicial proceedings). See also United States v. Mojica-Baez, 229 F.3d 292, 307 (1st Cir. 2000) (finding that sentencing a defendant to more than ten years for an aggravated firearm offense under 18 U.S.C. § 924(c) where the indictment failed to allege the type of firearm used was plain error, but finding no prejudice), cert. denied, 121 S. Ct. 2215 (2001).[6] The Tenth

---

[6]In United States v. Tran, 234 F.3d 798 (2d Cir. 2000), the Second Circuit held that the government's failure to include the element of the type of firearm used or carried in a 18 U.S.C. § 924(c) violation was jurisdictional error and thus not subject to plain error review. However, the Second Circuit questioned the soundness of Tran when it voted to rehear en banc United States v. Thomas, 204 F.3d 381 (2d Cir. 2000). See United States v. Thomas, 248 F.3d 76, 78 (2d Cir. 2001) (en banc). The Second Circuit requested the parties to brief the following issues:

Circuit recently held en banc that "the failure of an indictment to allege an essential element of a crime does not deprive a district court of subject matter jurisdiction; rather, such a failure is subject to harmless error review." United States v. Prentiss, 256 F.3d 971, 981 (10th Cir. 2001).[7]

Our conclusion is not only consistent with the decisions of those other circuits, but also with Supreme Court precedent. In Neder v. United States, 527 U.S. 1 (1999), the Supreme Court held that "the omission of an element [in a jury instruction] is an error that is subject to harmless-error analysis." Id. at 15.[8] An

---

(1) Does drug quantity under 21 U.S.C. § 841, when it increases a defendant's sentence above a statutory maximum, constitute an element of the offense under the analysis used in Apprendi . . . such that it must be alleged in the indictment?
(2) Assuming that an indictment's failure to allege drug quantity is error, under what circumstances is that error subject to harmless or plain error review?
(3) Should this Court's analysis in the instant case be governed or influenced by United States v. Tran, 234 F.3d 798 (2d Cir. 2000), and, if so, is Tran's reasoning sound?
Id. at 78.

[7]In United States v. Jackson, 240 F.3d 1245, 1248-49 (10th Cir. 2001), the Tenth Circuit held that the failure of an indictment to allege the element of drug quantity cannot be reviewed for plain or harmless error but must be reversed and remanded. However, in Prentiss, the Tenth Circuit stated in its en banc opinion:
Contrary to our prior precedents, we hold that the failure of an indictment to allege an essential element of a crime does not deprive a district court of subject matter jurisdiction; rather, such failure is subject to harmless error review. To the extent that this Court's prior decisions . . . hold otherwise, we overrule them.
Prentiss, 256 F.3d at 981 (emphasis supplied).

[8]Ellis E. Neder was convicted by a jury of 73 counts of a 90 count indictment. United States v. Neder, Case. No. 91-175-Cr-J-16 (M.D. Fla. 1991). Among those counts were multiple charges of mail fraud, wire fraud, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1344, respectively. Neder appealed, arguing that "materiality" was an element of the offenses of mail fraud, wire fraud, and bank fraud, and that the district court had erred in not submitting "materiality" to the jury. See United States v. Neder, 136 F.3d 1459 (11th Cir. 1998). Instead,

9

indictment's error in not including an element of the offense is "analogous to the instructional error the Court considered in Neder." United States v. Nance, 236 F.3d 820, 825 (7th Cir. 2000). Like the Seventh and First Circuits, we are "compelled by the Supreme Court's decision in Neder to subject the indictment error in this case to plain error review." Mojica-Baez, 229 F.3d at 311. As the court in Mojica-Baez explained:

> It is true . . . that Neder was explicitly concerned with the failure to submit an element of an offense to the petit jury at trial and not with the failure to present an element to the grand jury to secure an indictment. But we do not think that distinction is significant where the indictment provided the defendant with fair notice of the charges against him.

---

the district court had entered its own findings regarding materiality outside the presence of the jury. Id. at 1461. This Court determined that "materiality" was not an element of these fraud offenses and that the district court had not erred. Id. at 1463. This Court based its determination primarily on the fact that the word "material" was not contained anywhere in the statutory language of 18 U.S.C. §§ 1341, 1343, or 1344.

Upon review, however, the Supreme Court held that "materiality" was an element of these fraud counts. Neder v. United States, 527 U.S. 1, 25 (1999). The Supreme Court remanded to this Court to determine whether the district court's failure to instruct the jury on materiality as an element of these counts was harmless error. Id. On remand, this Court determined that the district court's omission of the element of "materiality" in its jury instructions on these fraud offenses was harmless error and affirmed Neder's convictions for these offenses. United States v. Neder, 197 F.3d 1122, 1134 (11th Cir. 1999).

Although there is no mention of this fact in this Court's opinions or in the Supreme Court opinion, there was no allegation in the indictment of "materiality" in connection with the mail fraud, wire fraud, and bank fraud counts. See Neder Indictment, pp. 51-55, 57-66, 73-75, 79-84; See also United States v. Neder, 136 F.3d at 1461 (noting only that "[t]he indictment contained materiality as an element of many of" the offenses contained in the indictment). However, although this Court and the Supreme Court discussed the implications of the absence of this element from the jury instructions, analyzing its omission for harmless error, neither court discussed the legal significance of the absence of the element from the indictment. Nonetheless, from this we glean an implication that the absence of an element from an indictment would also be analyzed for harmless error.

10

Id. (citations omitted); see also Prentiss, 256 F.3d at 984 (quoting with approval Mojica-Baez). As the Seventh Circuit has pointed out, "[o]n plain error review, 'once the court concludes that the evidence was so strong that a petit jury was bound to find[] that a particular drug and quantity was involved, we can be confident in retrospect that the grand jury (which acts under a lower burden of persuasion) would have reached the same conclusion.'" United States v. Martinez, 258 F.3d 582, 587 (7th Cir. 2001) (quoting United States v. Patterson, 241 F.3d 912, 914 (7th Cir. 2001) and affirming life sentence despite defendant's claim that indictment did not allege a specific drug quantity and should be dismissed). We agree that any constitutional error arising from the omission of drug quantity in a § 841 indictment in the Apprendi context is analogous to the jury-instruction error the Supreme Court reviewed in Neder and that both errors should be treated under the same standard of review.[9]

---

[9]In this same vein, other cases from this circuit which have discussed review of Apprendi errors in the jury instruction, rather than the indictment, context are also instructive to our discussion in this case. See United States v. Smith, 240 F.3d 927 (11th Cir. 2001); United States v. Candelario, 240 F.3d 1300 (11th Cir. 2001); United States v. Nealy, 232 F.3d 825 (11th Cir. 2000). These cases determined that Apprendi error is a constitutional error, subject to plain or harmless error review, and does not create a structural error. In these cases, we found harmless error or no effect on the defendants' substantial rights and affirmed the defendants' sentences, even though they exceeded the applicable statutory maximum penalty under § 841(b)(1)(C). See Smith, 240 F.3d at 930 & n.5 (affirming 30-year sentence); Candelario, 240 F.3d at 1308 (affirming life sentence); Nealy, 232 F.3d at 829-30 & n.4 (affirming 32-year sentence).

11

We disagree with the concurring opinion's position that <u>Apprendi</u> error in an indictment is a jurisdictional defect.[10]  Both before and after <u>Apprendi</u>, an indictment charging that a defendant violated a law of the United States gives the district court jurisdiction over the case and empowers it to rule on the sufficiency of the indictment.  See <u>Alikhani v. United States</u>, 200 F.3d 732, 734-35 (11th Cir. 2000).[11]  An <u>Apprendi</u>-based challenge to a § 846 or § 841 indictment for failure to allege a specific drug quantity is not of a jurisdictional dimension but, at most, one of sufficient specificity of the indictment.[12]

_____

[10]The concurring opinion limits its jurisdiction argument to cases where the sentences exceed twenty years under §§ 841(b)(1)(A) and 841(b)(1)(B) and where the <u>Apprendi</u> error arises from an indictment absent a specific drug quantity (as opposed to arising from a jury-instruction error or burden of proof issue).  Thus, our discussion at this juncture focuses on the indictment aspect of <u>Apprendi</u> error.

[11]In <u>Alikhani v. United States</u>, we explained that:

'Subject-matter jurisdiction defines the court's authority to hear a given type of case. . . .' *United States v. Morton*, 467  U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed2d 680 (1984).  Congress bestows that authority on lower courts by statute; in our case, Congress has provided the district courts with jurisdiction–'exclusive of the courts of the States'–of 'all offenses against the laws of the United States.' 18 U.S.C. § 3231.  The United States filed an indictment charging Alikhani with violating 'laws of the United States,' and § 3231 on its face empowered the district court to enter judgment upon the merits of the indictment. . . .

200 F.3d at 734 (11th Cir. 2000).  Likewise, as Judge Easterbrook aptly summarized:  "Subject matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231 . . . . That's the beginning and the end of the 'jurisdictional' inquiry."  <u>Hugi v. United States</u>, 164 F.3d 378, 380 (7th Cir. 1999).

[12]McCoy's indictment broadly charges McCoy with conspiracy to possess with intent to distribute a detectable amount of cocaine base in violation of 21 U.S.C. § 846.  Our precedent strongly suggests that specifying a number is not the only way of alleging drug quantity in an

12

The concurring opinion adopts an essentially categorical approach that treats all indictment problems the same way without recognizing the significant differences between the nature of <u>Apprendi</u> error and other distinctly different indictment problems.  Because indictment errors are not all the same, we disagree with this categorical approach and take this opportunity to explain why the analysis in the concurring opinion fails here.

First, one type of indictment problem that is involved in some of the decisions cited by the concurring opinion is where the indictment is defective because it charged no crime at all.  For example, see <u>United States v. Meachum</u>, 626 F.2d 503 (5th Cir. 1980) (finding the indictment charging a "conspiracy to attempt" was fatally defective as there is no such offense).  This, however, is not a case where a defect in an indictment results in the indictment charging no crime at all.  Instead, a § 846 or § 841 indictment that charges a defendant conspired to possess or possessed with intent to distribute cocaine base, even absent

---

indictment.  <u>See</u> <u>United States v. Nealy</u>, 232 F.3d 825, 830 & n.5 (11th Cir. 2000) (stating "that the indictment likely only needs to reference the statute" but finding that the defendant abandoned the indictment issue and affirming his thirty-two-year sentence) (citing <u>United States v. Fern</u>, 155 F.3d 1318, 1325 (11th Cir. 1998)); <u>Fern</u>, 155 F.3d at 1325 ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge.") (citing <u>United States v. Stefan</u>, 784 F.2d 1093, 1101-02 (11th Cir. 1986)).  McCoy's indictment, if anything, is not limited to a specific drug quantity, but broadly encompasses any detectable amount of cocaine base, from one gram to 10,000 grams or beyond.  McCoy's indictment also does not reference § 841(b)(1)(C) and does not narrow or confine McCoy's crime to a lesser sentence or crime under § 841(b)(1)(C) as the concurring opinion argues.

13

specification of a precise amount of cocaine base, still charges a complete federal offense.

Second, another type of indictment problem in certain decisions relied upon by the concurring opinion involves such material differences between the proof at trial and the crime alleged in the indictment that the proof at trial impermissibly broadens the crime to one not charged in the indictment, thereby requiring a reversal of the underlying conviction. For example, Stirone v. United States, 361 U.S. 212, 215-17 (1960), was a direct appeal about the interstate commerce element required for a Hobbs Act violation. Stirone involved a material difference between the facts alleged in the indictment in support of that element — extortion in the transportation of sand from other states into Pennsylvania — and the facts shown at trial — extortion in the transportation of steel from Pennsylvania into Michigan and Kentucky. Id. at 213-14.[13] This type of indictment error ripens when the jury verdict comes in and at the time of conviction. In this situation, the charging terms (or allegations in the indictment) are materially broadened and altered to such a significant extent as to constitute an entirely new or different

---

[13]Similarly, in United States v. Peel, 837 F.2d 975 (11th Cir. 1988), the statutory language required that the defendant be on board a vessel of the United States or on board a vessel subject to the jurisdiction of the United States. However, the proof at trial showed only that the defendant was a citizen of the United States, and the trial court charged the jury the essential element was that the defendant was a "citizen of the United States on board any vessel." Id. at 977-78.

14

theory of the case and as to cause what the concurring opinion deems in effect a constructive amendment of the indictment.

In contrast, Apprendi errors — whether arising from the indictment or a jury instruction — are errors in criminal procedure that do not occur or ripen until the time of sentencing and affect at most the permissible sentence but do not invalidate the criminal conviction or materially change the theory of the case so as to amend the underlying indictment. Indeed, allegations in § 846 or § 841 indictments that charge generally that a defendant conspired to possess or possessed with intent to distribute cocaine base are not even broadened when a precise amount of that alleged cocaine base is proven at trial or at sentencing. Proof that supports only a precise drug quantity falls within McCoy's broader drug conspiracy charge and, if anything, narrows the allegations in the indictment to that amount. There is no significant variance material enough to warrant per se reversal, much less to create a jurisdictional error.[14]

Third, and in any event, nothing in Stirone says that Stirone-type errors in indictments are jurisdictional or that the procedural-bar doctrine in § 2255 cases

---

[14]See United States v. Bursten, 453 F.2d 605, 607-08 (5th Cir. 1971) (concluding the variance was harmless and not material where an indictment stated that defendant indicated on his tax return that "no tax was due and owing," and the evidence demonstrated that defendant had not used that language on his return but had entered on the final line of the tax return, "Please compute and bill if owed").

15

does not apply to Stirone-type errors. At most, what Stirone held is the particular error there was not subject to harmless-error analysis, resulting in reversal of the conviction in that case. Id. at 215-19. More importantly, Stirone was decided (a) before Chapman v. California, 386 U.S. 18, 22 (1967), in which the Supreme Court first stated that certain constitutional errors could be deemed harmless, and (b) before Neder, in which the Supreme Court further indicated that "most constitutional errors can be harmless." Neder, 527 U.S. at 8 (quoting Fulminate, 499 U.S. at 306). The Supreme Court has admonished that "[i]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitution[al] errors that may have occurred are subject to harmless-error analysis." Id. (quoting Rose v. Clark, 478 U.S. 570, 579 (1986)). Moreover, the list given in Neder of errors not subject to harmless or plain error review is a short one. See id. (mentioning complete denial of counsel, biased trial judge, racial discrimination in grand jury selection, denial of self-representation at trial, denial of public trial, and defective reasonable doubt instructions as structural errors). In light of this clear trend in Supreme Court precedent, we decline to extend Stirone beyond its terms to say that Apprendi error is jurisdictional.

Finally, for the reasons set forth by the First Circuit in United States v. Mojica-Baez, 229 F.3d 292, 309-11 (1st Cir. 2000), and the Tenth Circuit in

16

United States v. Prentiss, 256 F.3d 971, 984 n.11 (10th Cir. 2001), we do not believe that Stirone and cases like it imply a different result for Apprendi-error cases.

Thus, following the Supreme Court's, other circuits', and our precedent, we conclude that a claim of Apprendi error is not jurisdictional. Therefore, we next address whether McCoy's claim of Apprendi error is barred by Teague.

B. *Teague v. Lane* Bar

Although the government did not raise a Teague-bar defense in the district court, this Court has discretion to consider the argument on appeal. See Spaziano v. Singletary, 36 F.3d 1028, 1041-42 & n.5 (11th Cir. 1994). In Spaziano, this Court held that, although it retains discretion to decline to consider a Teague-bar defense when not raised below, addressing the issue is "consistent with our well-established precedent that a district court's decision may be affirmed on grounds the district court did not address." Id. at 1041; see also Caspari v. Bohlen, 510 U.S. 383, 389 (1994) ("[A] federal court may, but need not, decline to apply Teague if the State does not argue it. But if the State does argue [it] . . . , the court must apply Teague before considering the merits of the claim.") (citation omitted); Fisher v. Texas, 169 F.3d 295, 304-05 (5th Cir. 1999) (applying the Teague doctrine, "[i]n the interest of finality and judicial economy," even though that

17

defense was raised for the first time on appeal); Bannister v. Delo, 100 F.3d 610, 622 (8th Cir. 1996) (applying the Teague doctrine even though the state did not argue it). In this case, it is even more appropriate to consider Teague because the government was not asked to respond to McCoy's § 2255 petition in the district court, and therefore had no opportunity to raise Teague below.[15] Moreover, McCoy himself raised the Teague issue in his objections to the magistrate judge's recommendation to the district court, and the government raised the issue at the first opportunity on appeal.

The Teague doctrine bars retroactive application in a § 2255 proceeding of any new constitutional rule of criminal procedure which had not been announced at the time the movant's conviction became final, with two narrow exceptions. Teague, 489 U.S. at 310-13. A new rule should be applied retroactively only if it (1) "places certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) "requires the observance

---

[15]McCoy filed his § 2255 motion on October 3, 2000. On October 19, 2000, pursuant to 28 U.S.C. § 2255, Rule 4(b), the magistrate judge recommended denying the motion without seeking a response from the government. See 28 U.S.C. § 2255, Rule 4(b) ("If it plainly appears from the face of the motion . . . that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court . . . ."). On November 7, 2000, McCoy filed an objection to the magistrate judge's recommendation. On November 16, 2000, the district court denied McCoy's motion.

of those procedures that . . . are implicit in the concept of ordered liberty." Id. at 307 (internal quotation-marks omitted).

Whether the non-retroactivity standards set forth in Teague apply to bar a petitioner's Apprendi claim is a matter of first impression in this circuit. All circuits to reach the issue have held that the retroactive application of Apprendi is barred by Teague. See Dukes v. United States, 255 F.3d 912 (8th Cir. 2001) (life sentence); United States v. Moss, 252 F.3d 993, 997 (8th Cir. 2001) (360-months sentence); United States v. Sanders, 247 F.3d 139, 147 (4th Cir. 2001) (188-months sentence); Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir. 2000) (life sentence).

We give the Teague question priority in this particular case for several reasons. First, if Apprendi does not apply retroactively, this alone resolves the case. Given that Apprendi is being raised in the vast majority of § 2255 motions throughout our circuit, judicial economy counsels that we determine first whether the Apprendi rule even applies retroactively. Second, the Supreme Court has indicated that the Teague retroactivity decision is to be made as a "threshold matter" and should be addressed "before considering the merits of [a] claim." See, e.g., Penry v. Lynaugh, 492 U.S. 302, 329 (1989); Caspari v. Bohlen, 510 U.S.

19

383, 389 (1994); <u>Lambrix v. Singletary</u>, 520 U.S. 518, 524 (1997) (quoting <u>Penry</u> and <u>Caspan</u>).

Third, the Supreme Court's <u>Lambrix</u> decision, contrary to the concurring opinion's position, fully supports our deciding the <u>Teague</u> retroactivity issue first. <u>Lambrix</u> was a § 2254 case where the Supreme Court emphasized that "[a] State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system." 520 U.S. at 525. Therefore, <u>Lambrix</u> noted that the procedural-bar issue should ordinarily be considered first to "ensure[] that the states' interest in correcting their own mistakes is respected in all federal habeas cases" in a § 2254 case. <u>Id.</u> at 523. <u>Lambrix</u>'s comment about considering the procedural-bar issue first was made in the context of "comity" concerns in § 2254 cases and in order to prevent a defendant from evading state procedural rules in federal court. <u>Id.</u> at 523-25. However, the instant case involves a federal conviction and a § 2255 motion which do not implicate any state procedural rules. Moreover, even after noting those concerns, the Supreme Court itself in <u>Lambrix</u> actually proceeded to decide the <u>Teague</u> issue first. <u>Id.</u> at 525.

Thus, we will decide first the threshold <u>Teague</u> issue.

1. New Rule of Constitutional Law

Under Teague, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government [or] . . . if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301 (citations omitted). The other circuits to address the issue have determined that Apprendi did constitute a new rule of criminal procedure by requiring that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. See Moss, 252 F.3d at 997 (holding that "Apprendi is obviously a 'new rule' subject to the general rule of nonretroactivity"); Sanders, 247 F.3d at 147 (holding that Apprendi "constitutes a procedural rule because it dictates what fact-finding procedure must be employed to ensure a fair trial" and that it "is certainly a new rule of criminal procedure"); Jones v. Smith, 231 F.3d at 1236 (holding that "Apprendi certainly established a new rule").

We agree. Although it may have been foreshadowed by Jones v. United States, 526 U.S. 227 (1999), Apprendi established a new rule of criminal procedure, one that was not dictated by precedent existing before the Apprendi decision was released. Until it was announced, all circuits had been upholding sentences that were greater than the otherwise applicable maximum sentences

21

based on drug quantity not charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. Therefore, under <u>Teague</u>, because the new rule had not been announced at the time McCoy's conviction became final, it cannot be applied retroactively to his § 2255 petition unless it meets one of <u>Teague</u>'s two narrow exceptions.

2. Exceptions to <u>Teague</u>'s Non-Retroactivity Standards

The first category of rules excepted from <u>Teague</u>'s bar is that which places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority." <u>Teague</u>, 489 U.S. at 307. The circuits that have addressed this exception agree that it is inapplicable to the new rule of criminal procedure announced in <u>Apprendi</u>, since <u>Apprendi</u> did not decriminalize any class of conduct or prohibit a certain category of punishment for a class of defendants. <u>See</u> <u>Jones v. Smith</u>, 231 F.3d at 1237 (holding that "[t]he first exception identified in <u>Teague</u> is plainly inapplicable here, where the state's authority to punish Petitioner for attempted murder is beyond question"); <u>Sanders</u>, 247 F.3d at 148 (holding that "[t]he first exception clearly does not apply here because <u>Apprendi</u> did not place drug conspiracies beyond the scope of the state's authority to proscribe"); <u>Moss</u>, 252 F.3d at 997 (discussing the second exception as the only exception "[r]elevant to our inquiry"); <u>see also</u> <u>Daniels v. United States</u>, 254 F.3d

22

1180, 1192 (10th Cir. 2001) (deciding in the context of a successive § 2255 motion that Apprendi does not fall within Teague's first exception).[16]

The second category of rules excepted from Teague's bar is that which "requires the observance of those procedures that are implicit in the concept of ordered liberty." Teague, 489 U.S. at 307. Such "watershed" rules of criminal procedure are those in which (1) a failure to adopt the new rule "creates an impermissibly large risk that the innocent will be convicted," and (2) "the procedure at issue . . . implicate[s] the fundamental fairness of the trial." Id. at 312. In order to qualify under Teague's second exception, the new rule "'must not only improve accuracy [of trial], but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" United States v. Swindall, 107 F.3d 831, 835 (11th Cir. 1997) (quoting Sawyer v. Smith, 497 U.S. 227, 242 (1990)). The Supreme Court has underscored the narrowness of this second exception by using as a prototype the rule of Gideon v. Wainwright, 372 U.S. 335 (1963), and by stating that "[i]t is 'unlikely that many such components

_____

[16]We reject the concurring opinion's position that the Apprendi decision creates a new substantive rule of law. In Apprendi, the Supreme Court specifically noted that "[t]he substantive basis for New Jersey's enhancement . . . is not at issue; the adequacy of New Jersey's procedure is." 530 U.S. at 475 (2000). The application of Apprendi merely changes the method or procedure for determining drug quantity and his sentence; it does not make McCoy's conduct not criminal, thereby raising the spectre of actual innocence as the concurring opinion implies. Thus, as other circuits have, we conclude Apprendi announced a new rule of criminal procedure.

of basic due process have yet to emerge.'" <u>Sawyer</u>, 497 U.S. at 243 (quoting <u>Teague</u>, 489 U.S. at 313); <u>see also</u> <u>Tyler v. Cain</u>, 121 S. Ct. 2478, 2484 n.7 (2001) (emphasizing the "truly 'watershed'" nature of a rule which would fall within this exception); <u>Spaziano</u>, 36 F.3d at 1042-43 (stating that the new rule "must be so fundamentally important that its announcement is a 'groundbreaking occurrence'").

The other circuits to address the issue agree that <u>Apprendi</u> is not sufficiently fundamental to fall within <u>Teague</u>'s second exception. <u>See</u> <u>Jones v. Smith</u>, 231 F.3d at 1238 (holding that "the <u>Apprendi</u> rule, at least as applied to the omission of certain necessary elements from the state court information, is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial"); <u>Sanders</u>, 247 F.3d at 148 (holding that "a rule which merely shifts the fact-finding duties from an impartial judge to a jury clearly does not fall within the scope of the second <u>Teague</u> exception"); <u>Moss</u>, 252 F.3d at 998 (stating that "we do not believe <u>Apprendi</u>'s rule recharacterizing certain facts as offense elements that were previously thought to be sentencing factors resides anywhere near that central core of fundamental rules that are absolutely necessary to insure a fair trial").

We agree with these other circuits that the new rule announced by the Supreme Court in <u>Apprendi</u> does not fall within either exception to <u>Teague</u>'s non-

24

retroactivity standard. Therefore, like these other circuits, we hold that the new constitutional rule of criminal procedure announced in Apprendi does not apply retroactively on collateral review. Consequently, McCoy, whose conviction became final before the Supreme Court announced Apprendi, cannot now collaterally challenge his conviction on the basis of a claimed Apprendi error.

C. Procedural Bar

We also affirm the dismissal of McCoy's § 2255 petition on the additional alternative ground that he is procedurally barred from challenging his sentence on Apprendi grounds because he failed to raise the argument on direct appeal. A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal. See Frady, 456 U.S. at 167-68. Specifically, McCoy must show both "(1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. at 168.

McCoy contends that "cause" exists because the basis for his Apprendi claim was not known until after his conviction became final, since drug quantity was considered a mere sentencing factor until Apprendi. It is true that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." Bousley v. United States, 523 U.S. 614,

25

622 (1998) (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." Smith v. Murray, 477 U.S. 527, 537 (1986); see also Waldrop v. Jones, 77 F.3d 1308, 1315 (11th Cir. 1996) (stating that "a rule is 'novel,' and therefore cause for procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued"). Apprendi himself raised the issue some time before his case was argued to the New Jersey appellate court in February of 1997, see State v. Apprendi, 304 N.J. Super. 147, 698 A.2d 1265 (1997), so the building blocks for arguing it were obviously in existence as early as then. And as the other circuits to address this issue have noted, the foundation for Apprendi was laid years before the Supreme Court announced Apprendi. See Sanders, 247 F.3d at 146 (stating that "[t]he germ of Sanders' Apprendi claim had sprouted at the time of his conviction [in 1997] and there is no reason why he could not have raised it then"); Moss, 252 F.3d at 1001 (stating that "the argument that drug quantity is an offense element under § 841(b), not a sentencing factor, was certainly available to Moss's counsel at the time of Moss's direct appeal [in 1998]"); United States v. Smith, 241 F.3d 546, 548 (7th Cir. 2001) (stating that "the foundation for Apprendi was laid long before 1992"); Garrott v. United States, 238 F.3d 903, 905-06 (7th

26

Cir. 2001) (noting that "[o]ther defendants began making <u>Apprendi</u>-like arguments soon after the Sentencing Guidelines came into being"), <u>cert. denied</u>, 121 S. Ct. 2230 (2001).

The fact every circuit which had addressed the issue had rejected the proposition that became the <u>Apprendi</u> rule simply demonstrates that reasonable defendants and lawyers could well have concluded it would be futile to raise the issue. That is the basis for the dissenting opinion in <u>United States v. Smith</u>, 250 F.3d 1073 (7th Cir. 2001) (Woods, J., dissenting), which the concurring opinion in this case embraces. The problem with that position is that the Supreme Court could not have been clearer that perceived futility does not constitute cause to excuse a procedural default. <u>Bousley</u>, 523 U.S. at 623 ("As we clearly stated in <u>Engle v. Issac</u>, 456 U.S. 107, 102 S. Ct. 1558 (1982), futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.") (internal quotation marks omitted); <u>Smith v. Murray</u>, 477 U.S. 527, 535 (1996) (noting "the established rule that 'perceived futility alone cannot constitute cause.'"). Unless and until the Supreme Court overrules its decisions that futility cannot be cause, laments about those decisions forcing defense counsel to file "kitchen sink" briefs in order to avoid procedural bars, <u>see</u>

27

United States v. Smith, 250 F.3d at 1077 (Woods, J., dissenting), are beside the point.

In short, we agree with these circuits that the Apprendi claim McCoy now seeks to raise was reasonably available to his counsel at the time of McCoy's conviction. Therefore, we hold that because McCoy cannot show cause for his failure to raise the issue on direct appeal, he is procedurally barred from raising it now. Having determined that McCoy cannot show cause for his failure, we need not discuss whether he suffered "actual prejudice" resulting from the errors of which he complains.

## III. CONCLUSION

For the reasons discussed above, we hold that McCoy's Apprendi claims are not jurisdictional and that his Apprendi claims are barred by Teague's non-retroactivity standard. Additionally, McCoy's Apprendi claims, raised for the first time in his initial § 2255 motion, are barred by the procedural default doctrine. For both reasons, the district court's order dismissing McCoy's § 2255 motion is therefore **AFFIRMED.**

BARKETT, Circuit Judge, concurring in result only:

I agree that McCoy is not entitled to habeas relief, but not for the reasons put forth by the majority. I believe that McCoy is correct to claim that a sentence that violates Apprendi v. New Jersey, 530 U.S. 466 (2000), is jurisdictional error, and therefore the error may be raised on collateral review without being subject to procedural default or to the nonretroactivity analysis of Teague v. Lane, 489 U.S. 288 (1989). However, I believe that any sentence below the twenty-year statutory maximum established by 21 U.S.C. § 841(b)(1)(C) does not violate Apprendi, and McCoy was sentenced to a term below twenty years. Since there was no Apprendi error in his sentence, he is not entitled to relief. Because I believe that Apprendi error, when it occurs, is jurisdictional, I would not reach the procedural default and Teague issues raised by the majority, but my disagreement with the majority's analysis leads me to discuss them here.

## 1. A Sentence That Violates Apprendi Is Jurisdictional Error

A petitioner who raises a valid jurisdictional challenge in a habeas petition is entitled to obtain collateral relief without any additional showing.[1] Thus, the first question in analyzing a habeas petition asserting an Apprendi claim is whether a

---

[1]When a habeas petitioner asserts a claim for collateral relief based on jurisdictional errors to which no contemporaneous objection was made, the petitioner need show neither cause nor prejudice. Harris v. United States, 149 F.3d 1304, 1308-09 (11th Cir. 1989).

29

sentence that violates <u>Apprendi</u> is a jurisdictional error.  I believe that if an indictment or information charges a violation of § 841(a)[2] and the supporting facts allege only the minimum quantity required by § 841(b)(1)(C), the court's jurisdiction extends only to the imposition of a sentence within the twenty-year maximum pursuant to § 841(b)(1)(C).  This is because a court that imposes a sentence for the violation of § 841(a) in accordance with the greater penalties of § 841(b)(1)(A) or § 841(b)(1)(B) has then sentenced the defendant for an offense that was not properly alleged in the indictment; specifically, the essential element of drug quantity was lacking.  The failure to allege an essential element creates a jurisdictional error, and must be remedied by the imposition of a sentence within the maximum of twenty years established in § 841(b)(1)(C).

A.    **Does Apprendi Require That Drug Quantity Be Treated As An Essential Element Of The Crimes Set Forth In 21 U.S.C. §§ 841 And 846?**

---

[2]21 U.S.C. § 841(a) provides that it is "unlawful for any person knowingly or intentionally" to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  This section does not set forth any specific drug quantity that must be involved in the crime.  21 U.S.C. § 841(b)(1)(C) sets forth a maximum penalty of twenty years imprisonment for a violation of § 841(a).

21 U.S.C. § 841(b)(1)(A) and (b)(1)(B) criminalize the same conduct as § 841(a) but establish specific threshold drug quantities that must be involved in the crime.  These sections provide for correspondingly more severe penalties than that set forth in § 841(b)(1)(C) for a violation of § 841(a).  Specifically, § 841(b)(1)(A) establishes a penalty of ten years to life imprisonment or, if death or serious bodily injury results from use of the drug involved in the crime, a penalty of twenty years to life.  Section 841(b)(1)(B) establishes a penalty of five to forty years imprisonment, or, if death or serious bodily injury result from use of the drug involved in the crime, a penalty of twenty years to life.

No one disputes that prior to Apprendi certain basic principles were clearly and unambiguously established: (1) A defendant has the constitutional right under the Fifth Amendment to be charged by an indictment returned by a grand jury; (2) The court has the power to act only within the parameters of the specific crime charged in the indictment or information; (3) A sentence imposed outside of the parameters of the crime charged in the indictment or information is per se reversible; (4) A defendant has the constitutional right under the Fifth and Sixth Amendments to an information or indictment that gives notice of all of the essential elements of the crime charged and the factual bases therefor; (5) A defendant has the constitutional right to a jury determination of guilt beyond a reasonable doubt as to each essential element of the crime charged; (6) Any waiver, by plea or otherwise, of the right to notice by indictment or information, or of the right to a jury determination of guilt beyond a reasonable doubt, must be voluntary and intelligent.

In Apprendi, the Court stated that a fact that increases the penalty for a crime beyond the otherwise-applicable statutory maximum "fits squarely within the usual definition of an 'element' of the offense." Apprendi, 530 U.S. at 494 n.19. The Court held that "other than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.

The fundamental question posed after Apprendi is whether these statements mean that drug quantity must be treated as an element of the offenses set forth in 21 U.S.C. §§ 841 and 846 in order to impose the enhanced penalties provided by § 841(b)(1)(A) and (b)(1)(B) for the increased amount of drugs involved in the offense. I see only three ways to answer this question. The first is that drug quantity is an essential element of the offenses punishable under § 841(b)(1)(A) and (B), and that, therefore, all of the basic principles established by longstanding precedent that apply to traditional offense elements—involving the defendants' rights under the Fifth and Sixth Amendments, as well as the boundaries of the court's power to act—apply to the element of drug quantity in § 841(b)(1)(A) and (B). Application of these principles to 21 U.S.C. § 841 leads to the conclusion that when an indictment charging a violation of § 841(a) fails to allege drug quantity, any sentence in excess of twenty years is reversible per se for resentencing within the twenty-year statutory maximum prescribed by § 841(b)(1)(C).

The second option is that drug quantity is not an essential element of the crimes set forth in § 841(b)(1)(A) and (B), but remains a mere "sentencing factor." If this is so, drug quantity need not be charged in the indictment or proved to a jury

32

beyond a reasonable doubt, but may be found by the sentencing judge by a preponderance of the evidence.

The third possibility is that although drug quantity is an element necessary to be charged and proved to a jury beyond a reasonable doubt, it constitutes a new kind of element, a constitutionally novel creature that is an element for some purposes but not for others. On this unprecedented theory, which the majority appears to endorse, the "element" must be alleged in the indictment, but if it is not, that failure does not have the same effect as a failure to allege a "real" element. Whereas precedent teaches that the failure to allege an element essential to the crime charged is a fatal defect requiring reversal of the excess sentence for resentencing within the proper bounds of the offense charged, the failure to allege this new "quasi-element" may be excused by an appellate court if it thinks it harmless, and procedurally defaulted and <u>Teague</u> barred on collateral review.

Our own circuit and every other circuit to have spoken on the question has determined that the only plausible interpretation of <u>Apprendi</u>, especially as read together with <u>Jones v. United States</u>, 526 U.S. 227 (1999), is that drug quantity is an offense element of the crimes punishable by § 841(b)(1)(A) and (B) that must be alleged in the indictment as a prerequisite to the imposition of the sentences

33

under those provisions.[3]  I believe this conclusion derives from both the language

and holding of Apprendi.

In Apprendi, the Supreme Court held that the Sixth and Fourteenth

Amendments "indisputably entitle a criminal defendant to 'a jury determination

that [he] is guilty of every element of the crime with which he is charged, beyond a

---

[3]Our circuit reached this conclusion in United States v. Rogers, 228 F.3d 1318, 1327 (11th Cir. 2000), as has every other circuit to address the question.  See United States v. Promise, 255 F.3d 150, 156-57 (4th Cir. 2001) ("Accordingly, Apprendi dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt."); United States v. Fields, 242 F.3d 393, 395 (D.C. Cir.  2001) ("[I]t is now clear that, in drug cases under 21 U.S.C. §§ 841 and 846, before a defendant can be sentenced to any of the progressively higher statutory maximums . . . in subsections 841(b)(1)(A) or (B), the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt.") (emphasis added); United States v. Nance, 236 F.3d  820, 826 (7th Cir. 2001) ("Under Apprendi, before the defendant could receive a sentence greater than twenty years but no more than 40 years, the indictment should have charged that he had conspired to distribute 5 grams or more of the cocaine base mixture and that issue should have been submitted to the jury and proven beyond a reasonable doubt by the government.") (emphasis added); United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000) ("[W]e hold that if the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt.") (emphasis added); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir.  2000) ("[I]f the government wishes to seek penalties in excess of those applicable by virtue of the elements of the offense alone, then the government must charge the facts giving rise to the increased sentence in the indictment, and must prove those facts to the jury beyond a reasonable doubt.") (emphasis added); cf. United States v. Tran, 234 F.3d 798, 808 (2d Cir.  2000) (aggravating firearm enhancement must be charged in the indictment and proved to the jury beyond a reasonable doubt because "[a] prosecutor cannot make an end run around the jurisdictional prerequisite of an indictment by charging any federal offense, and then proceeding to prosecute a defendant for a different, albeit related, federal offense.  Likewise, a prosecutor cannot make this jurisdictional end run, and then urge the court to sentence the defendant for an offense for which the defendant was neither charged nor convicted.").

34

reasonable doubt.'" Apprendi, 530 U.S. at 477 (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)).  The Court characterized any "fact that increases the penalty for a crime" as "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict," indeed, as noted above, as one that "fits squarely within the usual definition of an 'element' of the offense." Apprendi, 530 U.S. at 494 n.19.  As Justice Thomas wrote in his concurring opinion, joined by Justice Scalia, "[o]ne need only look to the kind, degree, or range of punishment to which the prosecution is by law entitled for a given set of facts.  Each fact necessary for that entitlement is an element." Id. at 501 (Thomas, J., concurring).  Drug quantity in 21 U.S.C. § 841 is precisely such a fact—that is, a fact that legally entitles the prosecution to increased ranges of punishment under § 841(b)(1)(A) and (B) that exceed the statutory maximum for drug crimes of indeterminate quantity set forth in § 841(a) and (b)(1)(C).[4]  Thus, as a result of Apprendi, it is clear that drug quantity must be treated as an element of the offenses described by these subsections.

Accordingly, if a sentence under § 841(b)(1)(A) or (B) is to be imposed, the necessary elements of the crimes charged therein, including the threshold drug

---

[4]See supra note 3.

35

amount prerequisite to the application of these subsections of the statute,[5] must be "charged in the indictment and proven to a jury beyond a reasonable doubt . . . ." United States v. Rogers, 228 F.3d 1318, 1327; see also United States v. Cotton, ___ F.3d ___ (4th Cir. Aug. 10, 2001). But I can find no reason in logic or law for failing to apply the consequences that flow from that determination, as the majority would do by finding that the error is not jurisdictional.

The majority suggests that, on appeal, an Apprendi error in the indictment is susceptible to harmless error review if it has been preserved, and plain error review if it has not; and similarly, it maintains that the error can be procedurally defaulted or Teague barred on collateral review. The problem with this view is that it fails to account for the court's responsibility, in every criminal case, to ascertain precisely the bounds of its own jurisdiction as delineated by the offenses charged in the indictment or information. If drug quantity constitutes an element of the offenses in § 841(b)(1)(A) and (B), then failure to plead quantity in the indictment must, under all existing precedent, constitute jurisdictional error that requires any

_____

[5]Although the Government does not need to allege the precise amount of drugs involved, the Government must allege drug quantity with sufficient specificity to apprise the defendant under which subsections of § 841 the Government is proceeding. See Jones, 526 U.S. at 230-37 (failure of indictment to refer to either of federal carjacking statute's two subsections criminalizing activity involving certain aggravating facts, coupled with indictment's failure to allege any of the specific facts set forth by those subsections, amounted to a failure to charge either of the aggravated crimes).

sentence in excess of twenty years to be reversed for resentencing within the limit of § 841(b)(1)(C). The majority, in its effort to sidestep this result, impermissibly creates a new class of "quasi-elements" not subject to this rule.

**B.      Failure To Plead Drug Quantity In The Indictment Is A Fatal Jurisdictional Defect To Any Sentence In Excess of twenty Years**

**i.      The Court's Jurisdiction To Impose A Sentence Is Limited To the Offense Charged In The Indictment**

When an indictment is not brought by the grand jury or does not contain all the essential elements of the crime charged and the necessary factual bases therefor, there is error in the subsequent criminal proceedings. When challenged, a conviction or sentence based on charges not initially brought by the grand jury must be per se reversed because, unlike most ordinary trial errors, "an indictment found by a grand jury [i]s indispensable to the power of the court to try [the defendant] for the crime with which he was charged." Ex Parte Bain, 121 U.S. 1, 12-13 (1887). Likewise, a "court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 217 (1960). The power, or lack thereof, to try defendants on the specific charges made in an indictment is the essence of the court's criminal jurisdiction.[6]

---

[6]The majority notes that several circuits have applied plain error review to Apprendi-based claims that an indictment fails to specify drug quantity, citing United States v. Terry, 240 F.3d 65, 74-75 (1st Cir. 2001); United States v. Patterson, 241 F.3d 912, 914 (7th Cir. 2001); United States v. Prentiss, 256 F.3d 971 (10th Cir. 2001) (en banc), United States v. Mojica-Baez,

37

The remedy required by the Supreme Court for a sentence imposed beyond

the trial court's jurisdiction is a remand for resentencing within the proper confines

---

229 F.3d 292, 310-12 (1st Cir. 2000), and United States v. Nance, 236 F.3d 820, 825-26 (7th Cir. 2000). Although, like the majority here, these cases utilized harmless or plain error review, none of them explains why, if drug quantity is an essential element of the crime charged, the ordinary consequences established by precedent for the indictment's failure to allege such an element should not be applied.

While Nance reviewed the failure of an § 841 indictment to charge drug quantity for plain error, it simply did not address the question whether the error was jurisdictional in nature. The Nance Court merely assumed, without discussion, that since the defendant had not challenged his sentence on Apprendi grounds in the trial court, review on appeal was for plain error. See Nance, 236 F.3d at 824. Patterson, another Seventh Circuit case, merely cited Nance and did not discuss the jurisdictional question. Terry was likewise silent and simply assumed that review was for plain error.

Nor, as the Second Circuit recently pointed out in United States v. Tran, 234 F.3d 798, 809 (2d Cir. 2000), did the Mojica-Baez case directly address this issue. Indeed, Mojica-Baez expressly noted that an indictment's failure to charge an essential element of an offense must be recognized by the court at any time during the proceedings, either sua sponte or on motion of the parties (which, if anything, suggests that the error is jurisdictional in nature). 229 F.3d at 308-09 ("We accept as true two general propositions . . . . The first proposition is that an objection that an indictment fails to state an essential element of an offense 'shall be noticed by the court at any time during the pendency of the proceedings.' Fed. R. Crim. Proc. 12(b)(2). . . . The second proposition is that a statutory citation standing alone in an indictment does not excuse the government's failure to set forth each of the elements of an offense.") (internal citations omitted). Yet the court did not at all address the question whether the alleged indictment error in the case before it was jurisdictional, instead simply holding that any error in the indictment was harmless. Presumably because of this deficiency in reasoning, the Second Circuit stated, "to the extent that Mojica-Baez can be read to conclude that this type of error is not jurisdictional, we reject that conclusion here." Tran, 234 F.3d at 809.

Although Prentiss did squarely hold that the failure to charge an essential element of an offense in the indictment does not constitute jurisdictional error, it, like the majority, in large part based its reasoning on Neder v. United States, 527 U.S. 1 (1999). See Prentiss, 256 F.3d at 984 ("To us, a defendant's right to have a petit jury find each element of the charged offense beyond a reasonable doubt is no less important than a defendant's right to have each element of the same offense presented to the grand jury. If denial of the former right is subject to harmless error analysis, we believe denial of the latter right must be as well."). As detailed below, I do not believe that Neder is applicable to the issue of whether the omission of an essential element from an indictment is a fatal deficiency precluding the imposition of a sentence beyond that prescribed for the crime that has been charged.

38

of its jurisdiction: "[T]he imposition of a sentence in excess of what the law permits does not render the legal or authorized section of the sentence void, but only leaves such portion of the sentence as may be in excess open to attack . . . . [T]he sound rule is that a sentence is legal so far as it is within the provisions of law . . . and only void as to the excess . . . ." United States v. Pridgeon, 153 U.S. 48, 62 (1894).[7] Therefore, any sentence imposed under § 841(b)(1)(A) or (B) in excess of twenty years, where the indictment alleges only a violation of § 841(a), is "void as to the excess" sentence imposed beyond the court's jurisdiction. Id.

The majority takes no account of this jurisdictional error that occurs when a court acts in excess of its authority. Indeed, even guilty pleas can not excuse such jurisdictional errors, for the court simply does not have authority to accept a plea to an offense greater than that charged in the indictment.

> The objection that the indictment fails to charge an offense is not waived by a guilty plea. The violation of [the defendant's] right to be free of prosecution for a nonoffense would bar his conviction even if his "factual guilt" had been established validly. The entry of a guilty

---

[7]In Pridgeon, the defendant was sentenced to a five-year term of imprisonment at a penitentiary that subjected inmates to "hard labor." Pridgeon, 153 U.S. at 50. The defendant sought a writ of habeas corpus on the grounds that the statute under which he was charged and convicted authorized only "imprisonment," and that the requirement of hard labor was in excess of the court's power, rendered his entire conviction void. Id. As an initial matter, the Court held that the defendant's subjection to "hard labor" was not beyond the power of the Court because hard labor was merely one of the rules of the penitentiary to which defendant was duly committed. Nevertheless, the Court held, even if the hard labor were in excess of the Court's authority, the appropriate remedy would be invalidation of the excess sentence rather than reversal of the entire conviction. Id. at 62.

plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense.

United States v. Meacham, 626 F.2d 503, 510 (5th Cir. 1980).[8]

The majority argues that a sentence in excess of twenty years under an indictment alleging only a violation of § 841(a) can be affirmed because it is not a structural error but simply a trial type error "analogous to the jury-instruction error" in Neder v. United States, 527 U.S. 1 (1999). Although, prior to Apprendi, no court had held that the omission of an essential element from an indictment was reviewable for harmless error, the majority, in applying this principle to Apprendi cases, would do just that.[9] To categorize the error in this way ignores the initial question that must be asked when an essential element has not been alleged in the indictment: What is the extent of the court's power to act or, put in the traditional way, the extent of its jurisdiction?[10] Neder is not applicable to this threshold issue.

---

[8]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[9] See also United States v. Moss, 252 F.3d 993, 1004 (8th Cir. 2001) (Arnold, J., dissenting) ("As far as I am aware, no case has ever held that the omission of an element of a crime from an indictment can be harmless error.").

[10]The majority states that its conclusion that the right of defendant to be charged by grand jury indictment does not go to the court's subject matter jurisdiction "finds implicit confirmation" in other cases in our circuit, citing United States v. Pease, 240 F.3d 938, 943 (11th Cir. 2001), and United States v. Swatzie, 228 F.3d 1278, 1282-83 (11th Cir. 2000) for support. However, in Swatzie, the Court found no indictment error, explaining that the indictment cited § 841(b)(1)(B) in the indictment and that "Swatzie does not even argue that he did not know before trial that the quantity or type of drugs could affect his sentence . . . ." In Pease, we found

40

First, as Neder recognizes, an error in a petit jury instruction is "simply an error in the trial process itself." Id. at 1833. Such errors can be assessed within the context of the trial and may consequently be deemed harmless. In contrast, the grand jury indictment confers initial jurisdiction upon the court and defines its scope. See, e.g., Gaither v. United States, 413 F.2d 1061 (D.C. Cir. 1969). Thus, an error by which the scope of the indictment is expanded cannot be analyzed in the context of the trial, for such errors precede any consideration of trial process errors and challenge either the court's initial jurisdiction or its reach.

As illustrated by Stirone, not every error in jury instructions is susceptible to harmless error review. Unlike the non-jurisdictional jury instruction error in Neder—to wit, failure to submit the issue of materiality to the jury when it was implicit in the jury instructions as a whole—the jury instructions given in Stirone varied from the indictment to such an extent that the substantial right to be tried only on charges presented in the indictment returned by a grand jury was abrogated. The defendant's sentence was therefore vacated because the court had exceeded its jurisdiction. See also United States v. Tran, 234 F.3d 798, 809 (2d

---

that the failure to allege drug quantity constituted plain error but did not substantially affect the defendant's rights because he did not contend that he distributed a lesser amount of drugs than that necessary to support his sentence. Although I believe Pease was wrongly decided, I also note that the jurisdictional aspect of the indictment error does not appear to have been raised by the defendant, nor did the Court address the question whether a sentence in excess of twenty years constituted a constructive amendment of the indictment. See infra Part 1.B.ii.

41

Cir. 2000) ("If the district court acts beyond its jurisdiction by trying, accepting a guilty plea from, convicting, or sentencing a defendant for an offense not charged in the indictment, this Court must notice such error and act accordingly to correct it, regardless of whether the defendant has raised the issue.").[11]

### ii. A Defendant Has A Right To Have A Grand Jury Consider The Crime For Which He or She Will be Punished And Can Only Waive This Right If The Waiver Is Voluntary

The conclusion that the failure to allege an element in the indictment is not susceptible to harmless error review flows from a recognition of the pivotal role played by the grand jury in the process of a criminal case. Under the Fifth Amendment, the Constitution gives the grand jury complete discretion to provide the parameters of a criminal proceeding, vesting it with the power to indict based on the evidence presented to it and the absolute choice not to indict, notwithstanding any evidence presented:

> In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and

---

[11]The majority's position also leads to the highly anomalous result of requiring greater specificity from a civil complaint than from a criminal indictment or information. Rule 8(a) of the Federal Rules of Civil Procedure requires that a civil complaint include "a short and plain statement of the grounds upon which the court's jurisdiction depends," and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). By holding that a sentence under § 841(b)(1)(A) or (B) could be upheld even where the indictment failed to allege drug quantity, the majority would functionally exempt the criminal indictment or information from even these minimal requirements.

42

perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." Thus, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come.

Vasquez v. Hillery, 474 U.S. 254, 263 (1986) (quoting United States v. Ciambrone, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)).

Thus, even when there is overwhelming evidence of drug amounts to support conviction and sentence under § 841(b)(1)(A) or (B), the grand jury has the right to refuse to charge the defendant with those amounts. Whatever decision is made by the grand jury for whatever reason, it cannot be reversed by a later petit jury, or worse, by the decision of the sentencing judge.

> The content of the charge, as well as the decision to charge at all, is entirely up to the grand jury—subject to its popular veto, as it were. The grand jury's decision not to indict at all, or not to charge the facts alleged by the prosecutorial officials, is not subject to review by any other body.

Gaither v. United States, 413 F.2d 1061, 1066 (D.C. Cir. 1969) (internal citations omitted); see also Russell, 369 U.S. at 770 (1962) (harmless error analysis would allow a defendant to "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.").

43

Moreover, just as the grand jury alone has the power to return an indictment, any amendments to the indictment must be made by the grand jury as well. See Stirone, 361 U.S. at 215-16; Bain, 121 U.S. at 8. If, in subsequent proceedings, "the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them," United States v. Bursten, 453 F.2d 605, 607 (5th Cir. 1971), the alteration is deemed a "constructive" or "effective" amendment. Id. Such substantial "broaden[ing]," see Stirone, 360 U.S. at 216, constitutes per se reversible error because it violates the defendant's constitutional right to be tried solely within the parameters of the charges returned by the grand jury.[12] See id.; Bursten, 453 F.2d at 607. In reviewing instructions to a jury which differed from the charges in the indictment, the Court in Stirone held:

> While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.

---

[12]I do not take a "categorical" approach to indictment errors, as the majority claims. Minor and insubstantial errors in the indictment that do not broaden its scope are obviously not construed as such amendments. However, as explained above, sentencing for more than the offense charged constructively amends the indictment, and no one but the grand jury has the power do this.

360 U.S. at 217.  In United States v. Peel, 837 F.2d 975, 979 (11th Cir. 1988), this court reiterated that a "constructive amendment of a grand jury indictment is reversible error per se."  Id. (emphasis in original).[13]

Because it is necessary to allege the requisite drug quantity in the indictment to sentence a defendant under § 841(b)(1)(A) or (B), it is clearly error to sentence the defendant in excess of twenty years under those provisions in the absence of such an allegation.  By such a sentence, the court, in place of the grand jury, supplies the missing allegation in the indictment, and, in place of the petit jury, "finds" it as a "fact."  This "fact" is "legally essential to the punishment to be inflicted," thereby increasing the penalty under § 841(b)(1)(A) or (B).  Thus, by such a sentence the court is constructively amending the indictment in just as substantial a manner as that prohibited in Stirone, and thus, as in Stirone, the error

---

[13]The majority appears to suggest that the authority of Stirone has somehow been diminished by the Supreme Court's decision in Chapman v. California, 386 U.S. 18 (1967).  Chapman held that some constitutional errors could be deemed harmless; it did not state that constitutional errors already deemed harmful by the Supreme Court could henceforth be regarded as harmless.  Put differently, Chapman did not give appellate courts license to survey the landscape of constitutional errors and recategorize them as they wish.  Until the Supreme Court holds that Stirone errors are harmless, its statement that some constitutional errors may be harmless has no effect whatsoever on the precedential force of its holding in Stirone.  Our own court in Peel, decided long after Chapman, recognized that the law deems constructive amendments of a grand jury indictment to be reversible per se.  See also United States v. Salinas, 601 F.2d 1279, 1290 (5th Cir. 1979) ("[A] constructive amendment of an indictment is considered to be reversible error per se if there has been a modification at trial in the elements of the crime charged.").

45

is per se reversible.[14] Because the court's sentence exceeds the jurisdiction established by the indictment, the erroneous sentence is not susceptible to harmless or plain error review on direct appeal, or procedural default on collateral review.

If the indictment has charged a violation of 21 U.S.C. § 841(a), alleging only some indeterminate drug quantity, the sentence for that crime is set out in § 841(b)(1)(C). Clearly the court has the jurisdiction or the power to sentence a convicted defendant under these allegations pursuant to this provision. However,

---

[14]In an effort to distinguish Stirone, the majority has invented yet another new constitutional rule holding that a constructive amendment occurs only when the change constitutes "an entirely new or different theory of the case. . . ." The majority cites no case law in support of this proposition; there is none. The majority alternatively argues that if there is a constructive amendment, it is one that narrows, rather than broadens, the allegations in the indictment by specifying a specific drug quantity. While a constructive amendment that truly narrows the allegations in an indictment will not constitute a fatal variation, see United States v. Miller, 471 U.S. 130 (1985), that is obviously not what has occurred here. In Miller, the indictment contained three counts of mail fraud, and after the government moved to dismiss the third count, the defendant was tried before a jury and convicted of the first two. Thus, as the Court noted, the defendant was convicted "based on trial proof that supports only a significantly narrower and more limited, though included, fraudulent scheme." Id. at 131. The Court held that there was not a fatal variation between the indictment and the conviction, writing that "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." Id. at 136 (emphasis added). This holding makes clear why Apprendi error in the context of § 841 is not a case of "narrowing": the problem with Apprendi error is precisely that the indictment has failed to allege an element of the offense.

The narrowing that occurred in Miller was the removal of a count from the indictment, and the defendant was convicted of the remaining two counts, of which (as the Court pointed out) the indictment gave him full and complete notice. Miller, 471 U.S. at 134. When an indictment has been narrowed, then, the defendant nonetheless had notice of every element necessary to constitute the crime of which he was convicted, and the government still had to prove every one of those elements. In the case of Apprendi error, the indictment has been constructively broadened to include an element that was not listed originally: in this case, possession of drugs in an amount in excess of the requisite statutory quantity.

46

any sentence "beyond the prescribed statutory maximum" of § 841(b)(1)(C) must

necessarily be based on a "fact" not alleged in the indictment, namely drug

quantity, that has "increas[ed] the penalty beyond the prescribed statutory

maximum" and that is "legally essential to the punishment to be inflicted." See

Apprendi, 560 U.S. at 490 n.15. When drug quantity is not alleged in the

indictment, such a sentence is invalid.[15]

For the foregoing reasons, it is clear to me that Apprendi error is

jurisdictional. As such, it is subject neither to procedural default nor Teague

---

[15] Obviously, as the majority points out, the defendant has the right to waive indictment by grand jury. In such a case, a court would, of course, undertake the usual constitutional inquiry as to whether the waiver was voluntary and intelligent and whether the substituting information complied with other constitutional protections. See United States v. Moore, 37 F.3d 169, 173 (5th Cir. 1994) (waiver of right to indictment by grand jury requires that the "court must be satisfied that the waiver was knowingly, understandingly, and voluntarily made."). The majority seems to argue that the fact that Fed. R. Crim. P. 7(b) allows a defendant to waive his Fifth Amendment right to be prosecuted by indictment and proceed instead on a criminal information somehow proves that failure to allege an essential element in an indictment is not a jurisdictional error but rather a trial type error that is subject to harmless or plain error review. It is difficult to discern the logic in this view. Rule 7(b) simply recognizes that a defendant can waive the grand jury's involvement in initiating the charges against him. The ability to waive the right to prosecution by indictment has nothing to do with whether errors at the charging phase are jurisdictional. If anything, the fact that the prosecution must alternatively proceed by information confirms that there is a vital jurisdictional step that cannot be waived: some charging document is essential to confer jurisdiction on the court and to define its scope. Waiving the right to a grand jury indictment does not mean a defendant waives either his own right, or the court's obligation, to assure subject matter jurisdiction over the relevant crime and punishment.

To use an admittedly extreme example to make the point, a defendant waiving indictment by the grand jury cannot be permitted to be sentenced for manslaughter under an information that only charges theft, even should he want to. The bottom line is that in every case, the court has an independent obligation to ensure that the charging document—whether indictment or information—outlines the elements of the crime. See DeBenedictis v. Wainwright, 674 F.2d 841 (11th Cir. 1982). Failure to allege an element constitutes jurisdictional error that renders any sentence relying on the unalleged element invalid. See id.

nonretroactivy analysis on collateral review, and a habeas petitioner who

established a valid Apprendi claim would be entitled to relief, i.e., to be

resentenced in accordance with § 841(b)(1)(C).[16]

_____

[16]I do not mean to suggest that the only problem with Apprendi error is jurisdictional. For example, it seems clear to me that, after Apprendi, an indictment that fails to allege drug quantity violates a defendant's right to notice under the Fifth and Sixth Amendments. It is a basic requirement of due process that the indictment provide a defendant with adequate notice of the crime with which he or she has been charged:

> The criteria [for a valid indictment] are, first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

Russell, 369 U.S. at 763-764 (collecting cases) (internal quotations omitted). As our own Circuit has emphasized,

> A grand jury indictment must set forth each essential element of the offense in order for the conviction to stand . . . . [T]he Sixth Amendment to the Constitution requires that every criminal defendant 'be informed of the nature and cause of the accusation.' Inclusion of the essential elements of an offense in an indictment provides the accused with the bare minimum of information necessary to meet this requirement . . . . [T]he Fifth Amendment guarantees the right of a grand jury indictment to each defendant to be prosecuted for an 'infamous,' or serious, crime. A grand jury can perform its function of determining probable cause and returning a true bill only if all elements of the offense are contained in the indictment.

United States v. Outler, 659 F.2d 1306, 1310 (5th Cir. Unit B 1981); see Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982) (adopting as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981). See also United States v. Ramos, 666 F.2d 469, 474 (11th Cir. 1982) (an indictment is valid only "as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished") (internal quotation marks omitted). "[T]he language of the statute may be used . . . but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Hamling v. United States, 418 U.S. 87, 117-18 (1984).

Defects in the charging document compromise the defendant's Sixth Amendment guarantee requiring that any guilty plea be made with full and meaningful notice of the criminal charges lodged against him. How a defendant prepares to answer the charges brought against him and whether or not he will choose to enter a guilty plea is dictated by the contours of the

**2.      In This Case McCoy Cannot Show Entitlement To Habeas Relief Because His Ten Year Sentence Does Not Violate Apprendi.**

Even if McCoy is correct that <u>Apprendi</u> error is of jurisdictional dimension, and may therefore be addressed on the merits on collateral review without any additional showing, McCoy's petition itself establishes that his sentence of 10 years was within the court's jurisdictional limits, and thus, no <u>Apprendi</u> error has occurred in his case.  Stated simply, I now believe that any sentence <u>under</u> the twenty-year statutory maximum pursuant to § 841(b)(1)(C) is not jurisdictionally defective if the indictment has alleged a violation of § 841(a) involving a controlled substance in schedule I or II or 1 gram of flunitrazepam, which is all that is required to support a sentence under twenty years pursuant to § 841(b)(1)(C).[17]

---

charging document.  Consider the example of a defendant charged with a drug crime of indeterminate quantity, who pleads guilty, and in his guilty plea, does not contest the government's allegations of a drug quantity which bring him within the increased range of § 841(b)(1)(A).  Laboring under the justifiable but erroneous belief that the Government was not required to charge that quantity in the indictment, or prove it beyond a reasonable doubt to the jury in the first place, the defendant forewent his right to take the quantity issue to the jury.  Such a waiver obviously cannot be deemed voluntary and intelligent, because the defendant's erroneous belief caused him to forego a fundamental constitutional right which he might otherwise have chosen to exercise.  The exacting standard for guilty pleas, see <u>Brady v. United States</u>, 397 U.S. 742, 747-48 (1970) ("That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized"), mandates that any such waiver must not be deemed voluntary and intelligent.  Thus, any sentence based on such a waiver violates a defendant's Sixth Amendment right to adequate notice of the charges against him upon which he can reasonably and knowledgeably base a defense or a plea.

[17]Although I initially believed that imposing a mandatory minimum pursuant to § 841(b)(1)(A) or (B) where no amount of drugs was alleged in the indictment would violate <u>Apprendi</u>, I have reconsidered that view.  <u>Apprendi</u> held that any fact, other than a prior conviction, that <u>increases</u> the penalty for a crime beyond the prescribed statutory maximum must

49

Therefore, McCoy can establish no <u>Apprendi</u> error and he is accordingly not entitled to relief.

Although I believe this determination resolves the case, the majority's conclusion that <u>Apprendi</u> errors are not jurisdictional leads it to discuss whether <u>Apprendi</u> claims may be procedurally defaulted or <u>Teague</u> barred. Because I disagree with the majority's analysis of these issues, I proceed to address them as well. Contrary to the majority's position, I believe that, even if <u>Apprendi</u> errors are not jurisdictional, a petitioner with an <u>Apprendi</u> claim may overcome the procedural default and <u>Teague</u> nonretroactivity doctrines on collateral review.

### **3.** **Teague Does Not Apply Because Apprendi Constitutes A New Substantive Rule of Criminal Law.[18]**

be submitted to a jury and proved beyond a reasonable doubt. <u>See</u> <u>Apprendi</u>, 530 U.S. at 490. But the <u>Apprendi</u> Court expressly limited its holding so as not to overrule <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986), in which the Court upheld a state statute that required a sentencing judge to impose a mandatory minimum sentence if the judge found, by a preponderance of the evidence, that the defendant possessed a firearm during the commission of the offense of conviction. <u>See</u> <u>Apprendi</u>, 530 U.S. at 487 n.13. Reading <u>McMillan</u> and <u>Apprendi</u> together, until the Supreme Court says otherwise, it appears that a sentence is not constitutionally defective unless the sentence exceeds the statutory <u>maximum</u> authorized by the indictment and the jury's ultimate verdict.

[18]I begin with <u>Teague</u> because the majority does. However, I disagree with the majority's decision to depart from the Supreme Court's position in <u>Lambrix v. Singletary</u>, 520 U.S. 518, 524 (1997), that questions of procedural default should ordinarily be decided before addressing whether <u>Teague</u> applies to bar retroactive relief. The majority argues that this Court should skip the procedural bar analysis in this case and decide petitioner's claim on <u>Teague</u> grounds because there are a large number of pending habeas cases raising <u>Apprendi</u> claims in our Circuit that may be subject to <u>Teague</u>, and a decision gives this Court opportunity to announce that these claims are <u>Teague</u> barred. However, the Supreme Court is clear in <u>Lambrix</u> that ordinarily courts should decide the procedural bar issue first in a case, before the <u>Teague</u> inquiry, and before a determination on the merits. <u>Lambrix</u>, 520 U.S. at 524-25.

New substantive rules of law are to be retroactively applied on collateral review. Bousley v. United States, 523 U.S. 614, 620-21 (1998);[19] see also Davis v. United States, 417 U.S. 333, 346-47 (1974) (holding that a defendant may assert in a § 2255 proceeding a claim based on an intervening substantive change in the interpretation of a federal criminal statute). New rules of criminal procedure, however, should not be applied retroactively on collateral review unless they fit within the exceptions delineated in Teague. For the reasons so clearly expressed by Judge Parker in United States v. Clark, 260 F.3d 382 (5th Cir. 2001) (Parker, J., dissenting),[20] I believe the

Certainly, the Court does recognize that in some cases "[j]udicial economy might counsel giving the Teague question priority, for example, if it were easily resolvable against the petitioner, whereas the procedural-bar issue involved complicated questions of State law." Id. at 525. However, the judicial economy the Supreme Court had in mind was not the judiciary's interest in issuing rules that will help clear its docket of pending cases; rather, the goal is to avoid speaking on complicated state law and constitutional questions. The Lambrix Court makes plain that "[c]onstitutional issues are generally to be avoided, and as even a cursory review of [the Supreme] Court's new-rule cases reveals, . . . the Teague inquiry requires a detailed analysis of federal constitutional law." Id. at 524. Therefore, I believe that Lambrix requires the majority to avoid the constitutional issues raised by this case under Teague at least until it has addressed whether the claim is procedurally defaulted.

The cause and prejudice analysis requires a court to assume that there was an error, and asks whether there was cause to excuse the failure to raise the claim earlier or whether the petitioner was actually prejudiced by the error, if it occurred. See, e.g., United States v. Frady, 456 U.S. 152, 167 (1982). Only after answering those two questions in the affirmative would the court make a determination on the merits of the petitioner's claim that there was an error. If it were otherwise, the Supreme Court would not have stated in Lambrix that "the procedural-bar issue should ordinarily be considered first." 520 U.S. at 524. I therefore believe that no departure from the Court's position in Lambrix is warranted in this case.

[19]In Bousley, the Court held that Bailey v. United States, 516 U.S. 137 (1995), created a rule of substantive law that therefore applied retroactively to cases on collateral review.

[20]Judge Parker was dissenting not from a finding that Apprendi announced a new procedural, as opposed to substantive, rule, but from a decision to remand to the district court for consideration of that question. See also Rosario v. United States, ___F. Supp.2d___ (S.D.N.Y. Aug. 30, 2001) (following

51

decision in Apprendi creates a new substantive rule of law and is therefore not subject to Teague.

At the outset, it is worth noting that the majority's footnote response to this argument misses the mark entirely. In note 17, the majority quotes a passage from Apprendi in which the Court wrote that "[t]he substantive basis for New Jersey's enhancement is . . . not at issue; the adequacy of New Jersey's procedure is." 530 U.S. at 475. In its proper context, that sentence is unrelated to the matter at hand. The prior sentence reads: "[A]lthough the constitutionality of basing an enhanced sentence on racial bias was argued in the New Jersey courts, that issue was not raised here." Id. The Court was simply saying, then, that the constitutionality of the "substantive basis" of the penalty enhancement—racial bias—was not before the court. In the present case, the substantive basis of the enhancement is a greater quantity of the controlled substance, and here too, the constitutionality of that basis is not at issue. That has no bearing whatsoever on whether Apprendi creates a change in substantive law. The real issue in determining whether Teague applies here is the effect of the Supreme Court's rejection of New Jersey's procedure on § 841 cases.[21] If, after Apprendi, any fact that

_____

Judge Parker's dissent and holding that Apprendi represents a substantive change in the law that is retroactively applicable on collateral review).

[21]To reiterate: The fact that the Court rejected New Jersey's procedure does not mean that Apprendi does not have a substantive effect on § 841 cases.

increases the penalty for a crime beyond the prescribed statutory maximum is an element of the charged offense rather than a mere sentencing factor, see Apprendi, 530 U.S. at 490, 494, then drug quantity is now an element of an offense leading to a punishment in excess of twenty years pursuant to § 841(b)(1)(A) or (B).[22]  And the addition of an element to an offense is obviously a change in substantive criminal law. See, e.g., Caming v. United States, 889 F. Supp. 736, 739 (S.D.N.Y. 1995) (noting that the Supreme Court's decision requiring the government to prove an additional element "effectuated a change in the law . . . .").

This does not mean that Apprendi does not also have procedural components; no one has denied that.  See Clark, 260 F.3d at ___ (Parker, J., dissenting) ("I recognize that Apprendi's new rule has both substantive and procedural components."). Apprendi does require, as the majority points out, that certain facts previously found by the judge must now be submitted to the jury and proved beyond a reasonable doubt; that is a consequence of their being elements of the charged offense.[23]  But whether Apprendi is also procedural is beside the point.  As long as a petitioner's claim relies

---

[22]I have already discussed why Apprendi requires that drug quantity be treated as an element of the offense leading to a sentence in excess of twenty years pursuant to § 841(b)(1)(A) or (B).  See supra Part 1.A.

[23]Even insofar as Apprendi is procedural, I do not believe that Teague would bar retroactive application of Apprendi to cases on collateral review.  Justice O'Connor, joined by three other Justices, called Apprendi "a watershed change in constitutional law," 120 S.Ct. at 2380 (O'Connor, J., dissenting), which falls precisely within the second exception to Teague.  Teague, 489 U.S. at 312.

on <u>Apprendi</u>'s effect on substantive law, as it does in the context of § 841, the claim is not analyzed under <u>Teague</u>. See <u>Davis</u>, 417 U.S. at 346-47.

**4.      Even If Apprendi Error Is Not Jurisdictional, A Petitioner Is Not Procedurally Barred From Making An Apprendi Claim.**

Even if <u>Apprendi</u> claims were not jurisdictional and therefore subject to procedural default, I believe that a petitioner with such a claim would not be procedurally barred from presenting it. A petitioner challenging a non-jurisdictional error to which he did not contemporaneously object and which he did not raise on direct appeal must show both (1) "cause" excusing his failure to seek relief on direct review and (2) "actual prejudice" resulting from the asserted error. <u>United States v. Frady</u>, 456 U.S. 152, 167 (1982). There is no question that actual prejudice will always be shown if the petitioner was sentenced in excess of the twenty-year maximum of § 841(b)(1)(C). But the majority argues that McCoy cannot show cause. I believe he plainly can.

The majority agrees that McCoy could show cause if the legal basis of his <u>Apprendi</u> argument were not "reasonably available" to him before his conviction became final. See <u>Bousley</u>, 523 U.S. at 622 ("a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default") (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984)). But the majority finds that "the foundation for <u>Apprendi</u> was laid years before the Supreme Court announced

54

Apprendi," and that the reason McCoy did not raise it earlier is simply that it would have been futile to do so, because it had been rejected by every circuit that had addressed the issue. And perceived futility, the majority adds, does not constitute cause to excuse a procedural default.

Resting on this futility doctrine, the majority's reasoning leads to the improbable conclusion that the rejection of a claim by every circuit in the country can never be considered relevant to whether the claim is or is not reasonably available.[24] I believe the majority has misinterpreted the Supreme Court's concern with allowing a party's perception that it would be futile to present a particular claim to constitute cause. A careful reading of Bousley and the cases on which it relies makes clear that the Supreme Court did not pronounce nearly as broadly as the majority suggests.

In Bousley, the Court wrote: "As we clearly stated in Engle v. Isaac, 456 U.S. 107, [130 n.35] (1982), 'futility cannot constitute cause if it means simply that a claim was "unacceptable to that particular court at that particular time."'" 523 U.S. at 623. In the first place, then, "futility" must be understood in the context of a particular court

---

[24]If every court has rejected the claim, that suggests there would be a dearth of legal precedent in support of it, to say the least. But it cannot be the case that an utter lack of legal precedent is irrelevant to the question of whether an argument is reasonably available. As Judge Wood has written, "there are several points that [the Bousley Court] flagged for consideration before a court may conclude that an argument was legally 'available.' First, was the proposed rule fairly suggested by precedent? Second, had any court accepted the proposed rule? Third, if the answer to the first two is yes, how widely accepted had the rule become at the time of the guilty plea (or other pertinent time)?" United States v. Smith, 250 F.3d 1073, 1075 (7th Cir. 2001) (Wood, J., dissenting).

55

at a particular time—not, as here, the nationwide rejection, by every court, of the claim at issue. This is because, in Engle, the Court was concerned with counsel's "decision to withhold a known constitutional claim" from the state court. Engle, 456 U.S. at 130 n.36. The Court made its point clearly in the text:

> [T]he futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim.

Id. at 130; see also Smith v. Murray, 477 U.S. 527, 535 (1986) ("[I]t is the very prospect that a state court 'may decide, upon reflection, that the contention is valid' that undergirds the established rule that 'perceived futility alone cannot constitute cause.'" (quoting Engle)). These are not the same concerns implicated in a federal case, and it takes the concept far beyond what was intended in Engle. It is one thing to preclude, as an excuse, the wholesale speculation that an argument not presented in the state courts would be futile; it is quite another to say that cause should not be recognized when a lawyer declines to make an argument in federal court because every single appellate court has already ruled against his position.[25] This view is entirely

_____

[25]In Bousley itself, the futility was not of the sort presented in this case. The issue in Bousley was whether collateral attacks on guilty pleas should be available as a result of the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995), which held that a jury must find "active employment" of a firearm before it may convict a defendant of the offense of "using" a firearm under 18 U.S.C. § 924(c). Unlike Apprendi, the holding in Bailey was not contrary to the position taken by every circuit in the country; rather, the Court granted certiorari specifically because appellate courts had divided over the

consistent with Supreme Court precedent—even in the context of state courts, if the decision not to present a claim was not made for tactical reasons.  As the Court stated, when it announces a decision that

> "overturns a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved" . . . there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement.

Reed v. Ross, 468 U.S. 1, 17 (1984) (quoting United States v. Johnson, 457 U.S. 537, 551 (1982)).  To penalize a petitioner for failing to make a claim on appeal that had been explicitly rejected by every circuit in the country would be patently unfair.  I think it plain that, in this context, the argument was not "reasonably available" and there is accordingly cause to excuse the failure to raise the claim earlier.


## CONCLUSION

In sum, I believe that McCoy correctly contends that Apprendi errors are jurisdictional, and that he is therefore entitled to a determination on the merits of his claim without a prior determination of procedural default or Teague nonretroactivity.

---

standards to be applied in interpreting the "use" provision of § 924(c).  The futility would therefore have involved only a "particular court at [a] particular time."

However, I find that he has not established a valid <u>Apprendi</u> claim, since he received a sentence below the statutory maximum of twenty years, and as a result he is not entitled to relief. Finally, even if <u>Apprendi</u> error were not jurisdictional, for the reasons stated above I believe that an <u>Apprendi</u> claim would not be procedurally defaulted or <u>Teague</u> barred.